UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BROOKE GLADU,<br>　　*Plaintiff*, | §<br>§<br>§ | |
| v. | §<br>§ | Civil Action No. 3:22-CV-1181-X |
| ONE WORLD FREIGHT SYSTEMS<br>d/b/a NOR-TEX TRANSPORT<br>SERVICES LLC,<br>　　*Defendant*. | §<br>§<br>§<br>§ | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Brooke Gladu sued Defendant One World Freight Systems d/b/a Nor-Tex Transport Services LLC ("Nor-Tex") for allegedly violating Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et seq. ("Title VII") and the Texas Employment Discrimination Act ("TCHRA"). Having already obtained the clerk's default on liability, Plaintiff now seeks a default judgment against Nor-Tex that includes a damages award (Doc. 23). For the reasons below, the Court **GRANTS** the motion for default judgment and enters judgment in favor of Plaintiff.

**I. Background**

Nor-Tex employed Plaintiff from 2018 until 2020. Plaintiff claims that during her employment, Anel Becirevic, Owner and President of Nor-Tex, made near daily unwanted sexual advances towards her. She also alleges that, on numerous occasions, Becirevic groped her, kissed her forcibly, and forced her to join him at bars or face termination. Plaintiff consistently refused the advances, reiterating a desire to keep the relationship professional. Becirevic remained undeterred, engaging in

increasingly escalated conduct. Plaintiff continued to deny his advances, and in February 2020, Becirevic suspended her. Four days after her suspension, Plaintiff apologized to Becirevic in an attempt to save her job. Becirevic agreed to allow her to return to work if she agreed to a lower salary and lower position. When Plaintiff returned to work, Becirevic demanded that she allow him to delete inappropriate and harassing text messages he sent her. When Plaintiff refused, Becirevic fired her.

Plaintiff sued Nor-Tex under Title VII, with hostile work environment and retaliation claims, and the TCHRA. Nor-Tex filed a one-paragraph answer that the Court struck, holding that Nor-Tex could not proceed pro se.[1] The Court gave Nor-Tex 30 days to file an answer represented by counsel or it would be in default.[2] Nor-Tex never did so, and so the Court ordered Plaintiff to move for default judgment.[3] Plaintiff asked for and obtained a clerk's default.[4] Plaintiff's initial default-judgment motion was denied without prejudice because it lacked information needed to determine Title VII's statute of limitations.[5] Within seven days, Plaintiff filed the motion at hand.

## II. Legal Standards

Federal Rule of Civil Procedure 55(b)(2) provides that, in proceedings not involving a certain sum:

> the party must apply to the court for a default judgment. A default

---

[1] Doc. 7.

[2] Doc. 10.

[3] Doc. 13.

[4] Docs. 14, 15.

[5] Doc. 22.

judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing. The court may conduct hearings or make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to:

(A) conduct an accounting;

(B) determine the amount of damages;

(C) establish the truth of any allegation by evidence; or

(D) investigate any other matter.

A default requires a court to accept as true a plaintiff's well-pled allegations in a complaint.[6]

In determining whether to enter a default judgment, courts conduct a two-part analysis. First, courts examine whether a default judgment is appropriate under the circumstances.[7] Relevant factors (called the *Lindsey* factors) include: (1) whether disputes of material fact exist; (2) whether there has been substantial prejudice; (3) whether grounds for default are clearly established; (4) whether the default was caused by a good faith mistake or excusable neglect; (5) the harshness of a default judgment; and (6) whether the court would be obliged to grant a motion from the defendant to set the default judgment aside.[8] Second, the Court assesses the merits

---

[6] *See, e.g.*, *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 499 (5th Cir. 2015) (a complaint is well-pled when "all elements of [a] cause of action are present by implication"); *Matter of Dierschke*, 975 F.2d 181, 185 (5th Cir. 1992) ("It is universally understood that a default operates as a deemed admission of liability.").

[7] *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

[8] *Id.*

of the plaintiff's claims and whether there is a sufficient basis in the pleadings.[9]

### III. Application

The Court deems the facts on liability to be admitted and finds Nor-Tex not to be incompetent or a minor. And the declaration from Plaintiff's counsel indicates Defendant is not on active-duty status with the Uniformed Services of the United States of America. And while Rule 55 allows for hearings, it does not command them. Plaintiff's motion is supported by a declaration of damages. As a result, a ruling without a hearing is proper.

#### A. Procedural Appropriateness of Default Judgment

The Court now turns to the six *Lindsey* factors. First, there are no material facts in dispute because Nor-Tex has not filed any responsive pleading. Second, regarding substantial prejudice, Nor-Tex's failure to respond could bring adversarial proceedings to a halt and substantially prejudice Plaintiff, but not itself. Plaintiff first filed her complaint nearly two years ago. Third, Nor-Tex's continual failure to respond or participate in this ligation—even after the Court directed it couldn't represent itself pro se—clearly establishes grounds for the default. Fourth, regarding mistake or neglect, there is no reason to believe Nor-Tex is acting under a good faith mistake or excusable neglect. Fifth, regarding the harshness of a default judgment, the Court is only awarding damages within the allowable limits of the statute. The sixth factor is whether the Court would grant a motion to set aside the default. The pleadings, the lack of response, and, consequentially, the failure to plead a

---

[9] *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).

meritorious defense indicate a lack of good cause for the Court to set aside the default judgment. Thus, the Court concludes a default judgment is appropriate under these circumstances.

### B. Sufficiency of Plaintiff's Hostile Work Environment Claim

Next, the Court must assess the merits of Plaintiff's hostile work environment claims considering her complaint. Although Nor-Tex, by virtue of its default, is deemed to have admitted Plaintiff's well-pled allegations, the Court must nonetheless review the complaint to determine whether it established a viable claim for relief.[10] An employee bringing a hostile work environment claim under Title VII must establish five elements to make a prima facie case: "(1) she belongs to a protected class; (2) she was subjected to harassment; (3) the harassment was based on sex; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take remedial action."[11]

As to the fourth element, "[t]o affect a term, condition, or privilege of employment, the harassment must be sufficiently severe or pervasive to alter the conditions of employment and create an abusive work environment."[12] The Court undergoes a "totality of the circumstances" analysis to determine whether an environment is abusive, "focusing on factors such as the frequency of the conduct, the

---

[10] *Nishimatsu*, 515 F.2d at 1206.

[11] *Saketkoo v. Adm'rs of the Tulane Educ. Fund*, 31 F.4th 990, 1003 (5th Cir. 2022) (cleaned up).

[12] *Id.*

severity of the conduct, the degree to which the conduct is physically threatening or humiliating, and the degree to which the conduct unreasonably interferes with the employee's work performance."[13] And an employee doesn't need to establish the fifth element "[w]hen a supervisor is the harasser."[14]

Here, Plaintiff's complaint sufficiently alleges a Title VII hostile work environment claim. Plaintiff pleads she belongs to a protected class and that her employer and boss, Becirevic, subjected her to harassment through "frequent and unwanted sexual advances."[15] She alleges he physically harassed her on numerous occasions, through unwelcome groping and kisses, and even caused her injury on one occasion.[16] Plaintiff pleads that this harassment occurred because she was female.[17] Finally, looking to the frequency and severity of the conduct, Plaintiff's complaint sufficiently alleges that the harassment affected a term, condition, or privilege of her job. She alleges that Becirevic's advances were "near-daily," subjecting her to harassment both during and after work.[18] The conduct was physically threatening because she alleges that Becirevic "physically picked Plaintiff up, and tried to kiss her. In trying to avoid his advances, Plaintiff hurt herself."[19] Accordingly, Plaintiff has pled her Title VII hostile work environment claim well.

---

[13] *Id.*

[14] *Wallace v. Performance Contractors, Inc.*, 57 F.4th 209, 221 (5th Cir. 2023).

[15] Doc. 1 at 3.

[16] *Id.* at 3–5.

[17] *Id.* at 3.

[18] *Id.* at 4.

[19] *Id.* at 5.

## C. Sufficiency of Plaintiff's Retaliation Claim

The Court next assesses the merits of Plaintiff's retaliation claim. To establish a prima facie case for retaliation, a plaintiff must show: "(1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse employment action."[20] "An employee has engaged in activity protected by Title VII if [s]he has either (1) 'opposed any practice made an unlawful employment practice' by Title VII or (2) 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing' under Title VII."[21]

Plaintiff's retaliation claim is likewise sufficiently pled. Here, Plaintiff engaged in protected activity by filing a charge with the EEOC. She further engaged in protective activity by pleading that she continuously refused Becirevic's advances and saying "that she wanted to keep things professional."[22] She pleads that, in response, Becirevic, took away her accounting responsibilities, suspended her for three days, threatened that she could only keep her job if she got paid less, and then ultimately fired her.[23] Finally, she pleads a causal link between the protected activity and the termination because she alleges that she was fired for refusing the unwanted sexual advances and for refusing to help Becirevic destroy text message evidence of

---

[20] *Saketkoo*, 31 F.4th at 1000.

[21] *Haynes v. Pennzoil Co.*, 207 F.3d 296, 299 (5th Cir. 2000) (citing 42 U.S.C. § 2000e-3(a)).

[22] Doc. 1 at 3.

[23] *Id.* at 5.

that harassment.[24]  Accordingly, Plaintiff has pled her Title VII retaliation claim well.

### D. Sufficiency of Plaintiff's Texas Labor Code Claim

TCHRA's statutory language tracks the language of its federal equivalent, Title VII.[25]  The plain language even states that TCHRA's purpose "[is] to: (1) provide for the execution of the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments."[26]  The Texas Supreme Court directs that courts use Title VII and "the cases interpreting [it] [to] guide [courts'] reading of the TCHRA."[27]

Because federal cases guide the interpretation of TCHRA claims, as Plaintiff pled her Title VII claims well, it follows that, she accordingly pled her TCHRA claims well.

### F. Damages

The Court now turns to the issue of damages.  Plaintiff seeks (1) $51,150 in backpay damages,[28] (2) $50,000.00 in damages from costs incurred by seeking mental health treatment for emotional distress, and (3) $50,000.00 in exemplary and punitive damages to deter future unlawful conduct by Nor-Tex.[29]  Plaintiff also seeks

---

[24] *Id.*

[25] *See* Texas Employment Discrimination Act, as amended, TEX. LAB. CODE §§ 21.001 et seq. and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C § 2000e; *see also Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 476 (Tex. 2001) ("These two provisions are nearly identical to section 107 of the federal Civil Rights Act of 1991.").

[26] TEX. LAB. CODE § 21.001(1).

[27] *Quantum Chem. Corp.*, 47 S.W.3d at 476.

[28] While Plaintiff's declaration attached to her default-judgment motion claims $51,150 in backpay, the default-judgment motion itself states that she is seeking $52,613.29 in backpay damages. *See* Doc. 23 at 7.  The Court will rely on her declaration. *See* Doc. 24 at 7.

[29] Doc. 23 at 6–7.

attorney's fees and costs.  In support of these claims, Plaintiff attached declarations and a copy of the EEOC charge.[30]

As to backpay, Plaintiff seeks backpay from the period of her last payment from Nor-Tex on February 20, 2020, until August 7, 2021.[31]  Title VII's statute of limitations precludes the recovery of backpay accrued more than two years before a plaintiff filed a charge with the EEOC.[32]  The EEOC charge was filed December 28, 2020,[33] so the period in question does not exceed the statutory time limit of two years. In her declaration, Plaintiff claims she earned a weekly salary of $1,100 at the time of her firing in February 2020.[34]  She claims she couldn't secure another job until September 2020 when she started working for Aldinger.[35]  She worked for Aldinger from September 2020 until December 28, 2020 and received a total of $30,563.12.[36] And Title VII reduces backpay damages if the Plaintiff received "[i]nterim earnings or amounts earnable with reasonable diligence."[37]

Seventy-six weeks passed during the window of time Plaintiff seeks backpay. Seventy-six times $1,100 is $83,600, less the $30,536.12 equals $53,063.88.  Plaintiff requests $51,150 in backpay damages, and so the Court awards that amount.

As to mental health damages, 42 U.S.C. § 1981(a) allows for recovery of

---

[30] Doc. 24.

[31] *Id.* at 7.

[32] 42 U.S.C. § 2000e-5(g)(1).

[33] Doc. 24 at 10.

[34] *Id.* at 7.

[35] *Id.*

[36] *Id.* at 8.

[37] 42 U.S.C. § 2000e-5(g)(1).

compensatory and punitive damages on a Title VII claim.[38] Compensatory damages under Section 1981(a) exclude "backpay, interest on backpay, or any other type of relief authorized under section 706(g) of the Civil Rights Act of 1964."[39] The statute caps the sum of compensatory and punitive damages at $50,000 for employers "who [have] more than 14 and fewer than 101 employees in each of 20 or more calendar weeks in the current or preceding calendar year."[40] The Fifth Circuit has held the plain meaning of the statute to apply this cap to each litigant, and not each claim or legal theory.[41] In support of this claim, Plaintiff declares that she received mental health treatment for emotional distress and mental anguish caused by Becirevic's harassment and that it resulted in $50,000 in damages.[42] She further claims that for the relevant calendar year, Nor-Tex employed between 40 and 50 employees.[43] As Plaintiff requests $50,000 and the statutory cap is $50,000, the Court awards $50,000 in compensatory damages. And because the statute caps Plaintiff's damages as "the sum of compensatory . . . and punitive damages,"[44] the Court denies her request for punitive damages claims.

### G. Injunctive Relief

Last, Plaintiff seeks injunctive relief against Nor-Tex, to prevent further

---

[38] *Id.* § 1981a(b).

[39] *Id.* § 1981a(b)(2).

[40] *Id.* § 1981a(b)(3)(A).

[41] *Black v. Pan Am. Labs., L.L.C.*, 646 F.3d 254, 264 (5th Cir. 2011).

[42] Doc. 24 at 8.

[43] Doc. 23 at 7, n. 2.

[44] 42 U.S.C. § 1981a(b)(3)(A).

unlawful conduct, including training on reporting and anti-harassment, supervisory discipline, and workplace monitoring.[45] Here, Plaintiff seeks injunctive relief that would only benefit non-parties because she is no longer an employee at Nor-Tex. And while "[i]njunctive relief which benefits non-parties *may sometimes* be proper" in instances where it is "designed to assist a party" and will also "accidentally assist persons not before the court,"[46] this is not one of those times because ordering Nor-Tex to undergo training or monitoring would benefit *only* persons not before this Court—other Nor-Tex employees. Further, when there is "clear and convincing proof of no reasonable probability of further noncompliance with the law," the Court need not award injunctive relief in a Title VII case.[47] Nor-Tex has not appeared in this case since August 4, 2022 despite Court order to file a revised answer, represented by counsel.[48] In its now-struck answer, Nor-Tex stated that it had "been closed [since 2021] due to the break out of covid . . . [was] defunded and has no money. . . [and was] no longer in business."[49] Accordingly, the Court denies Plaintiff's request for injunctive relief.

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS** Plaintiff's motion for default judgment against Nor-Tex. The Court awards Plaintiff backpay of $51,150 and

---

[45] Doc. 23 at 8.

[46] *Meyer v. Brown & Root Constr. Co.*, 661 F.2d 369, 374 (5th Cir. 1981) (emphasis added).

[47] *E.E.O.C. v. Boh Bros. Constr. Co.*, 731 F.3d 444, 469–70 (5th Cir. 2013) (en banc) (cleaned up).

[48] *See* Doc. 7.

[49] *Id.* at 1.

compensatory damages of $50,000.00. The Court denies the request for injunctive relief. This is a final judgment. The Court further **ORDERS** Plaintiff to file a bill of costs and a motion to recover attorney's fees within 14 days. All other relief not expressly granted is denied.

    **IT IS SO ORDERED** this 16th day of April, 2024.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE